30

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

JAN 1 0 2003

Michael N. Milby
Clerk of Court

PAUL RICHARD COLELLA,                '

        Petitioner,                   '
                                      '
                                      '
        -V-                           '     CIVIL ACTION NO. 1:01CV166
                                      '
                                      '
                                      '
JANIE COCKRELL, Director, Texas       '
Department of Criminal Justice,       '
Institutional Division,               '
                                      '
        Respondent.                   '

---

### PETITIONER'S RESPONSE TO RESPONDENT COCKRELL'S
### RESPONSE TO ORDER GRANTING DISCOVERY

**I.    Introduction**

Respondent has failed to produce the two categories of documents ordered to be produced by this Court's order of August 16, 2002 (Order). Contrary to the Respondent's Response to Order Granting Discovery, filed on or about October 9, 2002, the documents may exist, and Respondent has not undertaken the inquiry required to locate the documents. Alternatively, if the documents no longer exist, agents of the State destroyed them in bad faith.

**II.    Background**

On August 16, 2002, this Court ordered Respondent to produce to Petitioner (1) the grand jury testimony of Cameron County Sheriff's Deputy Luis Martinez; and (2) any notes, memoranda,

audio or video recordings and other records of Anthony "Red" Wilson's oral statement to the police in May of 1992. As of today, these documents have not been produced. Instead, on October 9, 2002, Respondent submitted her Response to Order Granting Discovery (Response) claiming that the documents could not be found.

The Response contains the Affidavit of John Olson (Olson Aff.), the September 24, 2002 letter from Capt. Rumaldo Rodriguez of the Cameron County Sheriff's Department (Rodiguez Letter) (in which Rodriguez states that office could not find any documents concerning Petitioner's case), the September 19, 2002 letter from the South Padre Police Department (in which that office said it had "no match" as to Petitioner, Brenda Colella and Anthony "Red" Wilson, and no documents), and the Memorandum of Investigation prepared by Nikki Arias (Arias Report).

On its face, the Response is ambiguous as to whether Sgt. Martinez testified before the grand jury. Mr. Olson asked Judge Migdalia Lopez, the lead prosecutor on Petitioner's trial, "if she remembers anything about Martinez's Grand Jury testimony" and "she did not recall that [it] existed." Olson Aff. at p. 1. Sgt. Martinez told Mr. Olson "that he really could not recall if he testified before the Grand Jury." *Id.* at p. 2. Mr. Olson's investigator Arias, however, tells a different story. She checked "the grand jury records, Volume #7 Page 109 and found that Cameron County Sheriff's Department Sgt. Luiz Martinez testified before the 197th Judicial District Court Grand Jury on February 26, 1992 at the time the Colellas case was presented to the Grand Jury." Arias Report at ¶ 2. The indictment as to Petitioner, Brenda Bowling Colella and Anthony "Red" Wilson was issued from the 197th Judicial District Court. *See* Appendix Vol. I, Exh. 2. Arias said that Sgt. Martinez told her that "he *did testify* before the Grand Jury regarding the Colella case in 1992." *Id.* at ¶ 5 (emphasis added).

2

Petitioner has asked to see Volume #7 Page 109 of the grand jury records, but to date his request has not been satisfied. In addition, Petitioner has asked to depose someone from the Cameron County Sheriff's Department regarding the status of files, but this request has not been met.

More disturbing is that the Response's denial about the existence of grand jury testimony contravenes the February 8, 1999 letter that the Office of the Attorney General – State of Texas (AG) sent to Assistant DA John Olson (February 8, 1999 Letter, attached hereto as Exhibit A and incorporated herein). The February 8, 1999 Letter arose as a result of Petitioner's request to the District Attorney's Office of Cameron County, Texas under the Texas Open Records Act Request (Act Request). Upon receiving the Act Request, Mr. Olson sent files concerning Petitioner's capital murder trial to the AG and sought an opinion as to whether certain information required public disclosure. In responding to Mr. Olson's request, the AG wrote the February 8, 1999 Letter, in which he stated that "[s]ome of the enclosed documents were presented to, subpoenas issued by *and testimony given before the grand jury.*" *See* Exhibit A at p. 3 (emphasis added). In other words, as of February 8, 1999, the AG indicated that it had the grand jury testimony and other documents pertaining to Petitioner's grand jury, and he had received these documents from Mr. Olson.

There is no question that in 1999 Sheriff Cantu's office had documents regarding Petitioner's case as that office presented files to Petitioner's counsel. The Arias Report states that Lt. Rodriguez of Sheriff Cantu's Department told Arias that "the previous Sheriff destroyed all the past records." Arias Report at ¶ 21.

Given that a life is at stake, given the serious inconsistency on the face of the Response, and given the inconsistencies between the Response and other evidence, Petitioner was obliged to try to find the truth. Petitioner's counsel indicated that it needed to depose Mr. Olson, the designated

3

representative of the Cameron County DA's office, and Sgt. Martinez. Respondent agreed to allow these three depositions only if Petitioner agreed to limit the scope of the depositions and the documents to be produced. While Petitioner disagreed with any limitations, given the need to try to learn the truth, the Agreement Allowing Limited Additional Discovery Regarding Matters on Which Discovery Has Been Granted (Discovery Agreement) was signed, which reserved all rights for further discovery. On Monday, January 13, 2003, Petitioner's counsel intends to file the transcripts of the depositions with the Court.

### III.    What the Depositions Revealed

In the afternoon of January 2, 2003, Petitioner's counsel deposed Investigator Gualberto Gonzalez, the designated representative of the Cameron County DA's Office, and Mr. John Olson, the former Assistant DA of Cameron County, Texas. In the morning of January 3, 2003, Petitioner's counsel deposed Sgt. Martinez. The depositions were pursuant to subpoena *duces tecum* and subject to the Discovery Agreement. None of the witnesses produced documents.

Respondent's counsel did produce an envelope that contained documents Mr. Olson had sent Mr. Palmer in August of 2002 on Olson's belief at that time that the documents could relate to the Order. Included in the envelope was the attached Exhibit B, which Mr. Olson identified as the DA's checklist of exhibits used at trial. Olson 12-13. At first reading the list may appear mundane and innocuous. It identifies the exhibits and allows the DA or her assistant to place a checkmark as to whether the exhibit was identified, offered and admitted at trial. Upon closer reading, one can discern that Exhibit B establishes that in the DA's mind Exhibits 33 and 40 were photographs showing Red Wilson's tire tracks. As for Exhibit 33, the entry states: "Photograph (Tire Imprint on Sand) Red's Bronco." To the side are initials, "L.M.", presumably for Luis Martinez who proved up

4

the photo. As for Exhibit 40, the entry states: "Photograph Tire Track (belonging to Red's Pick-up)." Again, the initials, "L.M.", are on the side. It is preposterous, given Exhibit B and given Sgt. Martinez's testimony in Brenda Colella's case, for the State to have claimed in Petitioner's trial that Exhibits 33 and 40 do not show Red Wilson's tire tracks. With the production of Exhibit B, the issue about what Exhibits 33 and 40 depict is no longer in doubt (if it ever were). Sgt. Martinez gave false testimony in Petitioner's trial that the tire tracks in these photos were not from Red's bronco. Exhibit B establishes that the State knew these photos showed the tire tracks of Red's bronco at the dump scene.

As to the elusive grand jury testimony, given the passage of time, Sgt. Martinez could not recall whether he had testified before Petitioner's grand jury. Martinez at 15-16. He was sure that if he did testify, a court reporter would have taken down his testimony. *Id.* at 17.

The Arias Report establishes that Sgt. Martinez did testify before Petitioner's grand jury. Arias Report at ¶ 2. It is thus clear, based on Sgt. Martinez's testimony, that a court reporter took down Sgt. Martinez's grand jury testimony. To date, the court reporter has not been identified. Consistent with Sgt. Martinez's testimony and the Arias Report, the February 8, 1999 Letter establishes that grand jury testimony existed. Mr. Olson provided that grand jury testimony to the AG, as the February 8, 1999 Letter indicates.

If the grand jury testimony is gone, then it must have been destroyed after February 8, 1999. By February 8, 1999, Petitioner had already filed in this Court his Preliminary Petition for a Writ of Habeas Corpus. That preliminary petition was filed on September 9, 1998 but it was not based on any independent investigation that Petitioner's current counsel had undertaken. It was filed with the express understanding that Petitioner's new counsel would have until spring 1999 to file a full-

5

blown, investigated habeas petition. Accordingly, and based on the parties' agreement, the preliminary petition was amended on March 23, 1999. In February and March 1999, Petitioner's counsel was working full-steam in getting the habeas petition on file, as the DA's office well knew. As of the March 23, 1999 filing, it became apparent that one of Petitioner's major claims was that the State knowingly put on false testimony about the tire tracks and knowingly put on false testimony about the estimated time of death.

Mr. Olson has attempted to distance himself from Petitioner's files by testifying that he never looked at them before sending the files to the AG. Olson at 33-34, 42-43, 46. Even though he had the Act Request in hand, he did not determine whether the files at issue were responsive to the request. Instead, he boxed up the material and shipped it to Austin. Hence, Mr. Olson cannot deny that the grand jury testimony was in the boxes he sent to the AG. *Id.* at 33-34. He also said he did not look at the files after the AG returned them to him in 1999. *Id.* at 48-49. Instead, he did not look at them until 2002 when he received a copy of the Order. *Id.* at 49. This statement by Mr. Olson was later proven false, when he was reminded that in 1999 he must have reviewed the files to produce documents to Petitioner's counsel in response to the Act Request. *Id.* at 75-76.

Sgt. Martinez also testified that it was the DA's practice to issue a subpoena to have him testify before a grand jury. A record would have been kept of this. Upon receiving the subpoena, he would have conferred with his boss to confirm he could appear before the grand jury and testify. Martinez at 28-29. To date, no one has produced any subpoena for grand jury testimony, although the February 9, 1999 Letter indicates that subpoenas were included in the materials Mr. Olson sent the AG.

6

Sgt. Martinez testified that the Cameron County Sheriff's Office kept a separate file in Petitioner's case (in addition to the file that the Cameron County DA's Office maintained) and that this file would be maintained *permanently*. *Id.* at 11-12. He said he saw an incomplete file in the DA's office when he was asked to help locate the grand jury testimony and notes regarding the Red Wilson interview. *Id.* at 12-13. Sgt. Martinez testified that any time he interviewed a witness and the interview resulted in important factual matters relating to a case, he would supplement his investigative report and keep the interview notes. *Id.* at 30-33. He "never diverted or did away from such a practice." *Id.* at 31; *see also id.* at 52. Hence, Sgt. Martinez's report would have noted his May 1992 meeting with "Red" Wilson given the facts Wilson disclosed in the meetings. *Id.* at 51-52, 54-55. Of note, on questioning by Respondent, Sgt. Martinez testified that he did not recall having any contact with Red Wilson after February of 1992. *Id.* at 50. Nevertheless, at Petitioner's trial, Sgt. Martinez testified about what Red told him at the May 1992 meeting. *See, e.g.*, Petition at ¶¶ 222-223. After the interview, Sgt. Martinez would have supplemented his case report and put the supplemental report in the permanent file. *Id.* at 25-26, 45-47. In addition, the file would have contained cards, signed by Wilson, indicating that Wilson had been notified of his rights. *Id.* at 45, 54-55.

Sgt. Martinez did not know whether the previous Cameron County Sheriff had destroyed the files. *See* Martinez at 28. He knew of no evidence as to any destruction of the Sheriff Department's permanent files. *Id.* at 18-19. Mr. Olson does not believe that the previous sheriff had destroyed any files. Olson at 90; *compare* Arias Report at ¶ 21. Why Petitioner's permanent file has not been produced remains unsolved. Clearly, some of the file was available in 1999, as the Sheriff sent materials from that file to Petitioner's counsel under the Act Request. Again, if the file is gone, it

7

was destroyed *after* the State knew that Petitioner was engaged in an extensive review of his case to prepare an amended habeas petition.  Indeed, Petitioner filed his first habeas petition in this case in September 1998.  If the file is gone, the State engaged in bad faith, and violated Petitioner's Constitutional rights.

## IV.     Conclusion

The revelations about what may have happened to Petitioner's files and the wholesale lack of a clear answer are astonishing.  At a minimum, they give further ground for a continuance of Respondent's motion for summary judgment, as Petitioner has requested, and support more formal measures to obtain the documents.  In addition, these developments support a denial of Respondent's motion for summary judgment and the granting of Petitioner's writ of habeas corpus, for which Petitioner now prays.  Further, Petitioner prays for any other relief to which he may justly be entitled.

8

Respectfully submitted,

*Michael Powell*

Michael V. Powell
Southern District No.  5429
State Bar No.  16204400
Locke Liddell & Sapp, LLP
2200 Ross Ave., Suite 2200
Dallas, Texas 75201
Ph: (214) 740-8520
F: (214) 740-8800

ONE OF THE COUNSEL FOR PETITIONER


## CERTIFICATE OF SERVICE

I hereby certify that I have caused the foregoing pleading to be faxed on counsel for Respondent, Capital Litigation Division, Office of the Attorney General, P.O. Box 12548, Capitol Station, Austin, Texas 78711, this 9th day of January, 2003.

*Michael Powell*

Michael V. Powell

9



OFFICE OF THE ATTORNEY GENERAL · STATE OF TEXAS
JOHN CORNYN

February 8, 1999

Mr. John A. Olson
Assistant County Attorney
Cameron County Courthouse
974 East Harrison Street
Brownsville, Texas 78520

OR99-0394

Dear Mr. Olson:

You ask whether certain information is subject to required public disclosure under chapter 552 of the Government Code. Your request was assigned ID # 122109.

The Cameron County Criminal District Attorney's Office received an open records request for information regarding a particular individual tried for capital murder. The requestor seeks the information on behalf of said individual. You indicate that the defendant is currently serving a sentence in the Texas Department of Criminal Justice, Institutional Division, but has not yet exhausted his federal appellate or other post conviction remedies. You contend that the requested information may be withheld from public disclosure under sections 552.101, 552.103, and 552.108 of the Government Code. We have considered the exceptions you claim and have reviewed the documents at issue.

Section 552.103(a) of the Government Code excepts from required public disclosure information:

> (1) relating to litigation of a civil or criminal nature or settlement negotiations, to which the state or a political subdivision is or may be a party or to which an officer or employee of the state or a political subdivision, as a consequence of the person's office or employment, is or may be a party; and

> (2) that the attorney general or the attorney of the political subdivision has determined should be withheld from public inspection.

To secure the protection of section 552.103(a), a governmental body must demonstrate that litigation is pending or reasonably anticipated and that the requested information relates to





POST OFFICE BOX 12548, AUSTIN, TEXAS 78711-2548 TEL: (512)463-2100 WEB: WWW.OAG.STATE.TX.US
An Equal Employment Opportunity Employer · Printed on Recycled Paper

EXHIBIT "A"

Mr. John Olson - Page _

that litigation. *Heard v. Houston Post Co.*, 684 S.W.2d 210 (Tex. App.--Houston [1st Dist.] 1994, writ ref'd n.r.e.); Open Records Decision No. 551 at 5 (1990). Having carefully considered your arguments and the submitted documents, we do not believe that litigation is realistically contemplated. You may not withhold the requested information under 552.103(a).

Section 552.108 reads in pertinent part as follows:

(a) Information held by a law enforcement agency or prosecutor that deals with the detection, investigation, or prosecution of crime is excepted [ from required public disclosure] if:

(1) release of the information would interfere with the detection, investigation, or prosecution of crime;

• • •

(b) An internal record or notation of a law enforcement agency or prosecutor that is maintained for internal use in matters relating to law enforcement or prosecution is excepted from the requirements of section 552.021 if:

(1) release of the internal record or notation would interfere with law enforcement or prosecution;

(2) the internal record or notation relates to law enforcement only in relation to an investigation that did not result in conviction or deferred adjudication; or

(3) the internal record or notation:

(A) is prepared by an attorney representing the state in anticipation of or in the course of preparing for criminal litigation; or

(B) reflects the mental impressions or legal reasoning of an attorney representing the state.

(c) This section does not except from [public disclosure] information that is basic information about an arrested person, an arrest, or a crime.

The records at issue pertain to a criminal case in which the defendant was convicted of capital murder and his conviction and death sentence were affirmed by the Court of

Mr. John Olson - Page 2

Criminal Appeals in 1995. You state that the defendant has not exhausted all appellate and post conviction remedies in state and federal court. We assume that you are releasing all of the "basic information about an arrested person, an arrest, or a crime" that must be disclosed pursuant to Gov't Code § 552.108(c). We also assume that you are releasing documents filed with a court. They are generally considered public and must be released. *See Star Telegram, Inc. v. Walker*, 834 S.W.2d 54, 57 (Tex. 1992); Attorney General Opinion DM-166 (1992). We conclude that you may withhold the records at issue that were prepared by state attorneys for the litigation pursuant to section 552.108.

Next you argue that some of information is confidential by law, either constitutional, statutory or by judicial decision pursuant to section 552.101 of the Government Code. Section 552.101 encompasses common-law privacy and excepts from disclosure private facts about an individual. *Industrial Found. v. Texas Indus. Accident Bd.*, 540 S.W.2d 668 (Tex. 1976), *cert. denied*, 430 U.S. 931 (1977). We conclude that you must withhold information on the jury questionnaires.

Some of the enclosed documents consist of criminal history record information ("CHRI"). Section 552.101 of the Government Code excepts from disclosure information made confidential by law, either constitutional, statutory, or by judicial decision. CHRI obtained from the National Crime Information Center or the Texas Crime Information Center is generally confidential by law. 28 C.F.R. § 20; Gov't Code § 411.083. CHRI that has been compiled by a governmental entity is protected by the common-law right to privacy. *See United States Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749 (1989). Therefore, you must withhold CHRI from disclosure under section 552.101 of the Government Code as information deemed confidential by law.

Some of the enclosed documents were presented to, subpoenas issued by and testimony given before the grand jury. These documents are confidential by law. Article 20.02(a) of the Code of Criminal Procedure states that "[t]he proceedings of the grand jury shall be secret." Thus, information that reveals the proceedings of the grand jury is confidential under article 20.02(a) of the Code of Criminal Procedure and excepted from disclosure under section 552.101 of the Government Code. Additionally, in Open Records Decision No. 513 (1988), this office concluded that grand juries are not subject to the Open Records Act, and that records within the constructive possession of grand juries are not public information subject to disclosure under the Open Records Act. *See* Gov't Code § 552.003. Based upon these considerations, we conclude that you must withhold this information.

Some of the documents consist of medical records. The release of medical records is governed by section 5.08 of V.T.C.S. article 4495b, the Medical Practice Act (the "MPA"), which provides:

Mr. John Olson - Page

(b) Records of the identity, diagnosis, evaluation, or treatment of a patient by a physician that are created or maintained by a physician are confidential and privileged and may not be disclosed except as provided in this section.

(c) Any person who receives information from confidential communications or records as described in this section other than the persons listed in Subsection (h) of this section who are acting on the patient's behalf may not disclose the information except to the extent that disclosure is consistent with the authorized purposes for which the information was first obtained.

Section 5.08(j)(3) requires that any subsequent release of medical records be consistent with the purposes for which a governmental body obtained the records. Open Records Decision No. 565 at 7 (1990). These documents may be released only in accordance with these provisions of the MPA. Open Records Decision No. 598 (1991).

We note that the submitted documents include an autopsy report. Autopsy reports prepared by a medical examiner are expressly made public by the Code of Criminal Procedure. Code Crim. Proc. art. 49.25, § 11. Therefore, you must release the autopsy report to the requestor.

Some of the documents are confidential and must be withheld because they involve juvenile conduct that occurred before January 1, 1996. Section 51.14(d) of the Family Code was repealed by the Seventy-fourth Legislature. Act of May 27, 1995, 74th Leg., R.S., ch. 262, § 100, 1995 Tex. Gen. Laws 2517, 2590. Currently, section 58.007 of the Family Code provides that law enforcement records concerning a child must not be publicly disclosed. Family Code Ann. § 58.007(c). However, the amending bill provides that "[c]onduct that occurs before the effective date of this Act is covered by the law in effect at the time the conduct occurred, and the former law is continued in effect for that purpose." Act of June 2, 1997, 75th Leg., R.S., ch. 1086, § 53(b), 1997 Tex. Sess. Law Serv. 10, 4199. It appears that at the time the conduct occurred here, the applicable law in effect was former Family Code section 51.14 which provides, in pertinent part:

(d) Except as provided by Article 15.27, Code of Criminal Procedure, and except for files and records relating to a charge for which a child is transferred under Section 54.02 of this code to a criminal court for prosecution, the law-enforcement files and records [concerning a child] are not open to public inspection nor may their contents be disclosed to the public.

Act of May 22, 1993, 73d Leg., R.S., ch. 461, § 3, 1993 Tex. Gen. Laws 1850, 1852, *repealed by* Act of May 27, 1995, 74th Leg., R.S., ch. 262, § 100, 1995 Tex. Gen. Laws 2517, 2590. In Open Records Decision No. 181 at 2 (1977) , this office held that former section 51.14(d) excepts police reports which identify juveniles or furnish a basis for their identification. *See also* Open Records Decision No. 394 at 4-5 (1983) (applying former

Mr. John Olson - Page

Fam. Code § 51.14(d) to "police blotter" and related information). You do not indicate that the records at issue here relate to charges for which the juvenile was transferred under section 54.02 of the Family Code to a criminal court for prosecution, or that article 15.27 of the Code of Criminal Procedure applies. Moreover, it does not appear that any of the exceptions to former section 51.14(d) apply to the requestor. *See* Act of May 22, 1993, 73d Leg., R.S., ch. 461, § 3, 1993 Tex. Gen. Laws 1850, 1852 (repealed 1995) (formerly Fam. Code § 51.14(d)(1), (2), (3)). Accordingly, we conclude that you must withhold the records under section 552.101.

We address your claim that the request is "overly broad, unduly burdensome... and the letter is couched in broad and global terms that are subject to ambiguity and vagueness..." as well as "whether the request is pursuant to the authority of Chapter 552 of the Government Code and whether the request is appropriate under the circumstances". Here, the requestor seeks all documents pertaining to the arrest, investigation, and trial of the defendant for capital murder. "These records should include, but are not limited to, all records and documents pertaining to or arising from: (1) the investigation of the crime; (2) the arrest; (3) the trial of the underlying matter or plea negotiations; (4) the investigation or prosecution of any proceedings after trial, including motions for new trial and direct appeal." You made a good faith effort to relate the request to information which you hold as illustrated by the information you mailed to us. We conclude that the request is appropriate under the circumstances.

We are resolving this matter with an informal letter ruling rather than with a published open records decision. This ruling is limited to the particular records at issue under the facts presented to us in this request and should not be relied upon as a previous determination regarding any other records. If you have questions about this ruling, please contact our office.

Yours very truly,

David Van Brunt Price
David Van Brunt Price
Assistant Attorney General
Open Records Division

DVP\nc

Ref:   ID# 122109

Enclosures:   Submitted documents

Mr. John Olson - Page

cc:    Ms. Susan L. Karamanian
       Locke, Purnell, Rain & Harrell
       2200 Ross Avenue-Suite 2200
       Dallas, Texas 75201-6776
       (w/o enclosures)

# EXHIBIT "B"

DEPOSITION EXHIBIT

| EXHIBIT NUMBER | ITEM – LOCATION AND CHAIN OF CUSTODY | I.D. | OFFERED | RECEIVED |
|---|---|---|---|---|
| #1 | Sketch – Crime Scene & Area  J.M. | ✓ | ✓ | LM |
| #2 | Photograph of Submerged Pick-up  S.B. | ✓ | ✓ | S.B |
| #2a | Video of Crime Scene | ✓ | ✓ | S.B |
| #3 | Photograph of Victim (Mike hanesphere) | ✓ | ✓ | S.B |
| #4 | " " " " | ✓ | ✓ | |
| #5 | " Victim Photo | | Not Admitted | |
| #6 | Photograph of Victim (Mike hanesphere) " S.B. | ✓ | ✓ | |
| #7 | " " " " S.B. | ✓ | ✓ | |
| #8 | Photograph of Victim (David R. Taylor) " S.B. | ✓ | ✓ | |
| #9 | " of Crime Scene (submerged Pickup into water) " S.B. | ✓ | ✓ | |
| #10 | " " " S.B. | ✓ | ✓ | |
| #11 | " of Victim (David Rae Taylor) " S.B. | ✓ | ✓ | |
| #12 | Court Photo by S.P.T. #01 – W. Andres Powell  L.M. | ✓ | ✓ | |
| #13 | Exhibit from Exhibit (Wilfred irrigation) | ✓ | ✓ | |
| #14 | Photo of Victim, David Taylor at Autops/ | ✓ | ✓ | |
| #15 | Photo of Gunshot wound Victim (David Taylor) | ✓ | ✓ | |

I included these to show what evidence was marked, offered, admitted t/o excluded. I don't know if it is Remus helpful. If not Remove.  JM

| EXHIBIT NUMBER | ITEM – LOCATION AND CHAIN OF CUSTODY | I.D. | OFFERED | RECEIVED |
|---|---|---|---|---|
| # 16 | Photo | | | 667 |
| # 17 | Photograph head of victim | | | |
| # 18 | Sketches of Audie Bowie I. Police Island | | | |
| # 19 | " | | | |
| # 20 | " | | | |
| # 21 | Panto | | | |
| # 22 | Ofln Bullet (Live Round) J.M. | ✓ | ✓ | ✓ |
| # 23 | Photographs Cenial J.M. | ✓ | ✓ | ✓ |
| # 24 | " J.M. | ✓ | ✓ | ✓ |
| # 25 | " J.M. | ✓ | ✓ | ✓ |
| # 26 | " J.M. | | ✓ | ✓ |
| # 27 | " | | ✓ | ✓ |
| # 28 | " 3rd victim at Algsov (U. Saughter) | | ✓ | ✓ |
| # 29 | Photo of victim David Tailor sunilat wound | | | |
| # 30 | Photo of Bowie | | | Not Admitted |
| # 31 | Copies of Checks | | | " |

| EXHIBIT NUMBER | ITEM - LOCATION AND CHAIN OF CUSTODY | I.D. | OFFERED | RECEIVED |
|---|---|---|---|---|
| #33 | (Copies) Photo Bills - Ricky Taylor Gillhigh Cross | ✓ | ✓ | ✓ |
| #34 | Photograph (Tire Imprint on Sand) Red's Bronco ♀M | ✓ | ✓ | ✓ |
| #35 | " " ♀M | ✓ | ✓ | |
| #36 | " White Pick-up ♀M | ✓ | | |
| #37 | " " ♀M | ✓ | | |
| #38 | Photograph Tire Tracks leading into the water ♀M | ✓ | ✓ | |
| #39 | " " ♀M | ✓ | ✓ | |
| #40 | Photograph Tire Track (Photograph of Red's Pick-up) ♀M | ✓ | ✓ | |
| #41 | " Tire Tread to Red's Pick-up ♀M | ✓ | ✓ | |
| #42 | Murder Weapon Gun Brenda Coble ♀M | ✓ | ✓ | |
| #43 | (R.C. Green) | ✓ | ✓ | |
| #44 | Photograph Inside White Pickup's Cab showing Victim David Lee Taylor ♀M | ✓ | | |
| #45 | " " " Water in Cab ♀M | ✓ | ✓ | ✓ |
| #46 | " of Victim David Lee Taylor | ✓ | ✓ | ✓ |
| #47 | " " ♀M | ✓ | ✓ | ✓ |

| EXHIBIT NUMBER | ITEM – LOCATION AND CHAIN OF CUSTODY | I.D. | OFFERED | RECEIVED |
|---|---|---|---|---|
| #48 | Photograph of Victim – David Lee Taylor – Chute in cab of Pick-up | ✓ | ✓ | ✓ |
| #49 | " of Victim " | ✓ | ✓ | ✓ |
| #50 | " " | ✓ | ✓ | ✓ |
| #51 | " " | ✓ | ✓ | ✓ |
| #52 | " " | ✓ | ✓ | ✓ |
| #53 | " " | ✓ | ✓ | ✓ |
| #54 | " " | ✓ | ✓ | ✓ |
| #55 | " " | ✓ | ✓ | ✓ |
| #56 | " Pick-up out of chute | ✓ | ✓ | ✓ |
| #57 | " of cab's frame | ✓ | ✓ | ✓ |
| #58 | " of Jack Dunn's trailer | ✓ | ✓ | ✓ |
| #59 | Autopsy report on Michael Lovejoy | ✓ | ✓ | ✓ |
| #60 | " on David Lee Taylor | ✓ | ✓ | ✓ |
| #61 | Photo of Sea Record Marine where Estrous are located | ✓ | ✓ | ✓ |
| #62 | Video of S.P.I. – Archie Barius HW100 | ✓ | ✓ | ✓ |
| #63 | Photo of Beach – Standing ft look foss – Photo US South | | | ✓ |

STATE'S EXHIBIT

| NUMBER | ITEM - LOCATION AND CHAIN OF CUSTODY |
|---|---|
| #64 | Photo of FA Rest - Pass - From Beach |
| #65 | Photo - Close-up of FA Rest - Pass - From A#1 100 |
| #66 | Photo of Pass - (looking between through Rock) - where Jack Dunn had his trailer |
| #67 | Photo of Pass where Jack Dunn's trailer & Sid Wilson's Camp located |
| #68 | Photo - Showing entrance to Paul & Brenda's Cabin. Camp 80 |
| #69 | Photo - Showing entrance to Paul & Brenda's Cabin. Camp |
| #70 | " |
| #71 | " |
| #72 | Photo Showing unknown pass next to Cabin's Camp |
| #73 | Photo of Jack Dunn's trailer relocated |
| #74 | Photo of Defendant Paul Richard Colella |
| #75 | Photo of third entrance to Beach - Beach towers Camp now |
| #76 | Sketch of Jack Dunn trailer & Satellite Bus at Cardine Beach S.P. |
| #77 | Bullet from Autopsy - Removed from W. Lawrence Pooh Brain |
| #78½ | Autopsy Report |
| #78 | Photograph of Paul Colella & Brenda Colella - |
| #79 | — Linen given by Red — |
| #80 | — Copy of Newspaper showing title |
| #81 | — " |
| #82 | Photo of Crime Scene showing tables |
| #83 | Given over DI group caravan w/red |

| EXHIBIT NUMBER | ITEM – LOCATION AND CHAIN OF CUSTODY |
|---|---|
| 84 | Rick Taylor Tius Tailes |

| EXHIBIT NUMBER | ITEM - LOCATION AND CHAIN OF CUSTODY |
|---|---|
| #1 | Sketch - Crime Scene & Area |
| #2 | Photograph of Submerged Pick-up |
| #2a | Video of Crime Scene |
| #3 | Photograph of Victim (Mike Lausphere) |
| #4 | " of Victim " |
| #5 | " of Victim " |
| #6 | Photograph of Victim (Mike Lausphere) |
| #7 | " of Victim " |
| #8 | Photograph of Victim (David R. Taylor) |
| #9 | " of Crime Scene (Submerged Pick up into water) |
| #10 | " " |
| #11 | " of Victim (David Roe Taylor) |
| #12 | Cris Photo of SPT #W100 D - Stellix Bowie |
| #13 | Bullet at Pathology |
| #14 | Photos of Victims David Taylor at Autopsy |
| #15 | Victims Wound " " " |

| EXHIBIT NUMBER | ITEM - LOCATION AND CHAIN OF CUSTODY |
|---|---|
| #16 | Plots |
| #17 | Plots |
| #18 | Photographs of Victim's Wound |
| #19 | Sketches of Andre Bowie & Palu Clobinil |
| #20 | " |
| #21 | " |
| #22 | Pants |
| #23 | Olin Bullet (Live Round) #1 |
| #24 | Photo's cui SPI |
| #25 | " |
| #26 | " |
| #27 | " |
| #28 | " of Victim at Autopsy (H. Ironsphere) |
| #29 | ? Wound ? |
| #30 | ? ? |
| #31 | Copies of Check |

| EXHIBIT NUMBER | ITEM – LOCATION AND CHAIN OF CUSTODY |
|---|---|
| #33 | Copies of Phone Bills |
| #34 | Photograph (The Imprint or Sand) Rod's Bronco |
| #35 | " " ( " " " ) |
| #36 | " " White Pick-up |
| #37 | " " |
| #38 | Photographs Tire tracks leading into the water |
| #39 | " " " " " |
| #40 | Photograph Tire track (Clackmuoy of Rod's Pick-up) |
| #41 | Miranda Warning Card Read to Raul Padilla |
| #42 | " " Brenda Colella |
| #43 | Waiver of Rights |
| #44 | Photograph Inside White Pickup's Cab Showing Victim David Lee Taylor |
| #45 | " " " " " Victim's Cab |
| #46 | " " of Victim David Lee Taylor |
| #47 | " " " |

| EXHIBIT NUMBER | ITEM - LOCATION AND CHAIN OF CUSTODY |
|---|---|
| #48 | Photograph of Victim David Lee Taylor (Wrists in cab of pickup) |
| #49 | Photograph of Victim David Lee Taylor " |
| #50 | " " " " " |
| #51 | " " " " " |
| #52 | " " " " " |
| #53 | " " " " " |
| #54 | " " " " " |
| #55 | " " " " " |
| #56 | " " " " Pick-up out of water |
| #57 | " of Kid's Bronco |
| #58 | " of Jack Dunn's trailer |
| #59 | Autopsy Report on Michael house spouse |
| #60 | " " on David Lee Taylor |
| #61 | Video of SPI Medic Eunice 8N/100 |
| #62 | Video of SPI Medic Eunice 8N/100 |
| #63 | Photo of Brock - Sterling w/ H but Pass |

| EXHIBIT NUMBER | ITEM - LOCATION AND CHAIN OF CUSTODY |
|---|---|
| #64 | Photo of Ft. Rust - Pass - From Beach |
| #65 | Photo Close-up of Ft. Rust - Pass - From the 100. |
| #66 | Photo of Pass - (Clearing between Niconly Beach) - Where Jack Dunn had his trailer located |
| #67 | Photo of Pass where Jack Dunn's Trailer & Sid Wilson's Camp located |
| #68 | Photo - Showing entrance to Paul & Brenda's Colilla's Camp. |
| #69 | " " |
| #70 | " " |
| #71 | " " |
| #72 | Photo Showing unknown pass next to Colilla's Camp |
| #73 | Photo of Jack Dunn's Trailer relocated |
| #74 | Trail Photo of Defendant Paul Richard Colilla |
| #75 | Photo of 3rd access road to Boca Audie Bowie - Beach Tower Camp |
| #76 | Rough Sketch of Audie Bowie Beach approx 9 mile stretch — |
| — | Showing Jack Dunn's Trailer end Sid's Trailer |
| #77 | Bullet from Culberg |
| #78 | Photo of Defendant and Brenda Colilla |