36

# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
ENTERED

FEB 2 1 2003

Michael N. Milby, Clerk of Court
By Deputy Clerk

| | | |
|---|---|---|
| PAUL RICHARD COLELLA, | § | |
| **Petitioner,** | § | |
| | § | |
| v. | § | CIVIL ACTION NO. B-01-166 |
| | § | |
| JANIE COCKRELL, | § | |
| DIRECTOR, TEXAS DEPARTMENT | § | |
| OF CRIMINAL JUSTICE, | § | |
| INSTITUTIONAL DIVISION, | § | |
| **Respondent.** | § | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Paul Richard Colella ("Petitioner"), a Texas prisoner sentenced to death, filed a Petition for

Writ of Habeas Corpus (Docket Entry No. 1). Pending before the Court is Respondent Janie

Cockrell's ("Respondent") Motion for Summary Judgment (Docket Entry No. 11). On January 13,

2003, this Court held a summary judgment hearing in which the Court scheduled an evidentiary

hearing to resolve factual issues raised by the petition. The Court, however, can adjudicate several

issues prior to the evidentiary hearing. After careful consideration of the parties' filings, the

arguments of counsel, the record evidence, and the relevant law, especially the application of the

Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), the Court recommends that

the summary judgment motion be **granted in part** and **denied in part**. The Court will detail the

basis for its recommendation below.

## BACKGROUND

For the purposes of the legal issues before the Court, it is unnecessary to review the factual

basis for Petitioner's conviction and sentence. On September 3, 1992, a jury convicted Petitioner

of the capital murder of Michael Lavesphere and David Ray Taylor. On September 4, 1992, the jury answered Texas' special issues in a manner requiring the imposition of a death sentence. The trial court subsequently sentenced Petitioner to die by lethal injection.

On October 11, 1995, the Court of Criminal Appeals denied Petitioner's direct appeal from his conviction and sentence in a published opinion. *Colella v. State*, 915 S.W.2d 834 (Tex. Crim. App. 1995). Petitioner did not seek certiorari review in the United States Supreme Court.

The Court of Criminal Appeals appointed counsel pursuant to Article 11.071 of the Texas Code of Criminal Procedure to represent Petitioner in his state habeas proceedings on November 22, 1996. On July 15, 1998, the Court of Criminal Appeals dismissed Petitioner's initial state habeas application as an abuse of the writ. The Court of Criminal Appeals found that Petitioner failed to file his state application in a timely manner under then effective Article 11.071 § 5(a).

On March 23, 1999, Petitioner filed an initial habeas petition in federal court. (*Colella v. Johnson*, 98-CV-121, Docket Entry No. 29). Respondent Gary Johnson filed a motion to dismiss that action for Petitioner's failure to exhaust state court remedies. (*Colella v. Johnson*, 98-CV-121, Docket Entry No. 36). On February 24, 2000, this Court recommended that the action be dismissed to allow the exhaustion of state court remedies, and on March 14, 2000, the District Court dismissed that case without prejudice. (*Colella v. Johnson*, 98-CV-121, Docket Entry No. 42. 43).

On August 18, 2000, Petitioner filed a second state habeas application. Petitioner later amended his second state habeas application. Second State Habeas Record at 1. Petitioner's second state application addressed all but one of the allegations contained in his current federal petition. The trial level entered findings of fact and conclusions of law recommending that the Court of Criminal Appeals deny habeas relief. Second State Habeas Record at 324. On September 19, 2001,

the Court of Criminal Appeals denied his second state habeas application in a written order. *Ex parte Colella*, No. 37,418-02 (Tex. Crim. App. Sept. 19, 2001) (unpublished opinion).

On September 27, 2001, Petitioner filed the instant habeas petition in federal court. (Docket Entry No. 1). The instant petition raises eight grounds for relief:

1.      The State engaged in prosecutorial misconduct at trial through the presentation of false evidence, proceeding under a different theory in Petitioner and his co-defendant wife's cases, entering into an immunity agreement with a witness, advancing a false impression of the evidence, and failing to disclose exculpatory information.

2.      The trial court denied Petitioner adequate resources to litigate his defense.

3.      Trial counsel provided constitutionally deficient assistance before trial, during both phases of the trial proceedings, and on direct appeal.

4.      The trial court improperly denied a motion to change venue.

5.      The facts of this case are insufficient to support his conviction under Texas' factual sufficiency of the evidence standard.

6.      The cumulative effect of the trial errors violated Petitioner's constitutional rights.

7.      The Court of Criminal Appeals denied Petitioner's right to a meaningful appeal by failing to review the sufficiency of the mitigating evidence.

8.      The trial court violated the Constitution by removing a juror for cause who stated that he could not impose a death sentence.

On February 28, 2002, Respondent filed a motion for summary judgment, arguing that Petitioner has not established a violation of federal law sufficient to call into doubt the state court proceedings. Pursuant to court ordered discovery (Docket Entry No. 22), the parties have engaged in limited factual development relating to the instant petition. On January 13, 2002, this Court held a summary judgment hearing in which it ordered that an evidentiary hearing be held with respect to factual issues that remain unresolved in this case.

## STANDARD OF REVIEW

The Court is authorized by 28 U.S.C. § 2254(a) to "entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." "The role of federal habeas proceedings, while important in assuring that constitutional rights are observed, is secondary and limited. Federal courts are not forums in which to relitigate state trials." *Barefoot v. Estelle*, 463 U.S. 880, 887 (1983). "Even less is federal habeas a means by which a defendant is entitled to delay an execution indefinitely." *Id.* Accordingly, federal habeas corpus courts "hold no supervisory authority over state judicial proceedings and may intervene only to correct wrongs of constitutional dimension." *Smith v. Phillips*, 455 U.S. 209, 211 (1982).

The deferential approach of the AEDPA governs this Court's review of Petitioner's habeas action. *See Lindh v. Murphy*, 521 U.S. 320, 327 (1997); *Nobles v. Johnson*, 127 F.3d 409, 414-15 (5th Cir. 1997), *cert. denied*, 523 U.S. 1139 (1998). The intent of the AEDPA is "to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U. S. 685, ___, 122 S. Ct. 1843, 1849 (2002). The AEDPA "embodies the principles of federalism, comity, and finality of judgments," *Evans v. Cockrell*, 285 F.3d 370, 374 (5th Cir. 2002), "substantially restrict[ing] the scope of federal review of state criminal court proceedings." *Montoya v. Johnson*, 226 F.3d 399, 404 (5th Cir. 2000), *cert. denied*, 532 U.S. 1067 (2001); *see also Woodford v. Visciotti*, __ U. S. __, 123 S. Ct. 357, 360 (2002) ("[Section] 2254(d)'s highly deferential standard for evaluating state-court rulings . . . demands that state court decisions be given the benefit of the doubt.").

4

The AEDPA provides that a federal habeas petition shall not be granted with respect to any claim adjudicated on the merits in state court unless the adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254 (d)(1)-(2).  The AEDPA further provides:

> (e)(1)  In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct.  The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

28 U.S.C. § 2254(e)(1).[1]  Deference under the AEDPA differs depending on whether the state court engaged in a legal, factual, or mixed inquiry.  *See Gachot v. Stalder*, 298 F.3d 414, 417-18 (5th Cir. 2002).

Section 2254(d)(1) "affords two avenues of relief for a habeas petitioner in federal court: He must show that the state court construction was either 'contrary to' federal law or an 'unreasonable application' of it."  *DiLosa v. Cain*, 279 F.3d 259, 262 (5th Cir. 2002).  For questions of law or

---

[1]      The AEDPA's deferential standards of federal habeas review apply to claims which were "adjudicated on the merits" by the state court.  28 U.S.C. § 2254(d); *see also Jackson v. Johnson*, 194 F.3d 641, 651 (5th Cir. 1999), *cert. denied*, 529 U.S. 1027 (2000).  The adjudicated-on-the-merits standard "does not speak to the quality of the process." *Valdez v. Cockrell*, 274 F.3d 941, 950 (5th Cir. 2001), *cert. denied*, __ U.S. __, 123 S. Ct. 106 (2002).  "In the context of federal habeas proceedings, adjudication 'on the merits' is a term of art that refers to whether a court's disposition of the case was substantive as opposed to procedural." *Neal v. Puckett*, 286 F.3d 230, 235 (5th Cir. 2002) (*en banc*) (citing *Green v. Johnson*, 116 F.3d 1115, 1121 (5th Cir. 1997)),*cert. denied*, __ S. Ct. __, 2003 WL 93321 (2003).

mixed questions of law and fact adjudicated on the merits in state court, this Court may grant federal habeas relief under 28 U.S.C. § 2254(d)(1) only if the state court decision was contrary to, or involved an unreasonable application of, clearly established Supreme Court precedent. *See Martin v. Cain*, 246 F.3d 471, 475 (5th Cir.), *cert. denied*, 534 U.S. 885 (2001).

In *Williams v. Taylor*, the Supreme Court reviewed the AEDPA's "new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court." 529 U.S. 362, 412 (2000). In *Williams*, the Supreme Court held that a state court decision is contrary to Supreme Court precedent if: (1) the state court's conclusion is "opposite to that reached by [the Supreme Court] on a question of law" or (2) "the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." *Williams*, 529 U.S. at 413. "[A] run-of-the-mill state-court decision applying the correct legal rule . . . to the facts of a prisoner's case would not fit comfortably within § 2254(d)(1)'s contrary to clause"; to warrant relief under § 2254(d)(1) the decision must have been "diametrically different from, opposite in character or nature from, or mutually opposed to" clearly established precedent. *Id.* at 405-06 (quotations omitted). A state-court conviction will be upheld so long as the state court at least correctly identified the governing legal principles. *See Bell*, 122 S. Ct. at 1852. To not run afoul of the "contrary to" clause, the AEDPA "does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, __ U.S. __, 123 S. Ct. 362, 365 (2002).

A federal court may also grant relief if the state court decision rests on "an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court." 28 U.S.C. § 2254(d)(1). A state court may unreasonably apply federal law if it "identifies the correct governing

legal rule from [the Supreme Court] cases but unreasonably applies it to the facts of the particular state prisoner's case" or "if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Williams*, 529 U.S. at 407. The Supreme Court cautions that an unreasonable application of federal law "is different from an *incorrect* application of federal law." *Id.* at 410; *see also Woodford*, __ U.S. at __, 123 S. Ct. at 361 (focusing on the reasonableness of the state court opinion "[w]hether or not we would reach the same conclusion."). To provide relief, a federal habeas court must not only conclude that "the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Williams*, 529 U.S. at 411; *see also Woodford*, __ U.S. at __, 123 S. Ct. at 360 (differentiating between an incorrect state determination and an "unreasonable application of federal law"); *Valdez v. Cockrell*, 274 F.3d 941, 947 (5th Cir. 2001) ("Thus, a state court application may be incorrect in our independent judgment and, yet, reasonable."), *cert. denied*, __ U.S. __, 123 S. Ct. 106 (2002).

A federal habeas court's review under 28 U.S.C. § 2254(d) "should be on the ultimate legal conclusion that the state court reached and not on whether the state court considered and discussed every angle of the evidence." *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002) (*en banc*), *cert. denied*, __ S. Ct. __, 2003 WL 93321 (2003). In reviewing the state court's substantive decision under the AEDPA, this Court's task is to "'determin[e] the reasonableness of the state court's 'decision,' . . . not grad[e] their papers.'" *Santellan v. Cockrell*, 271 F.3d 190, 193 (5th Cir. 2001) (quoting *Cruz v. Miller*, 255 F.3d 77, 86 (2d Cir. 2001)), *cert. denied*, 535 U.S. 982 (2002); *cf. Dillard v. Blackburn*, 780 F.2d 509, 513 (5th Cir. 1986) (observing that "federal courts do not sit as

7

courts of appeal and error for state court convictions"). This Court bases its analysis on "the state court's ultimate conclusion, not on its reasoning process." *DiLosa*, 279 F.3d at 262; *Neal*, 286 F.3d at 246.

Federal courts reviewing a state court's factual determination may grant relief only after finding that the state court's determination of fact was unreasonable in light of the evidence presented. *See* 28 U.S.C. § 2254(d)(2). In reviewing such factual determinations, a federal habeas court must presume correct the factual findings of the state court, unless the petitioner "rebut[s] the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *see also Jackson v. Anderson*, 112 F.3d 823, 824-25 (5th Cir. 1997), *cert. denied*, 522 U.S. 1119 (1998).

Respondent seeks summary judgment in this case. In ordinary civil cases, summary judgment is appropriate if "there is no genuine issue as to any material fact" and "the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); *Rojas v. TK Communications, Inc.*, 87 F.3d 745, 747 (5th Cir. 1996). A petition for writ of habeas corpus is a civil action in federal court. *See Archer v. Lynaugh*, 821 F.2d 1094, 1096 (5th Cir. 1987). "As a general principle, Rule 56 of the Federal Rules of Civil Procedure, relating to summary judgment, applies with equal force in the context of habeas corpus cases." *Clark v. Johnson*, 202 F.3d 760, 764 (5th Cir.), *cert. denied*, 531 U.S. 831 (2000). However, the Federal Rules of Civil Procedure are applicable only to the extent they do not conflict with the habeas rules. *See* Rule 11 of the Rules Governing Section 2254 Cases. In habeas proceedings, a court's summary judgment review is circumscribed by the AEDPA. *See Proctor v. Cockrell*, 283 F.3d 726, 729-30 (5th Cir. 2002).

Petitioner presented his claims in state court. The state courts issued detailed findings of fact and explicit conclusions of law with respect to those issues. Insofar as Petitioner's claims have been

adjudicated on the merits in state court, the AEDPA guides this Court's summary judgment review. "Therefore, § 2254(e)(1)--which mandates that findings of fact made by a state court are 'presumed to be correct'--overrides the ordinary rule that, in a summary judgment proceeding, all disputed facts must be construed in the light most favorable to the nonmoving party." *Smith v. Cockrell*, 311 F.3d 661, 668 (5th Cir. 2002). When, as here, a state prisoner's factual allegations have been resolved by the state courts, this Court accepts as correct the state determinations unless the prisoner meets his burden under 28 U.S.C. § 2254(e)(1). *See id.*

## PROCEDURAL BAR

Respondent argues that the operation of independent and adequate state procedural law bars federal consideration of the first seven claims in the instant petition. "This Court will not review a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment. *Coleman v. Thompson*, 501 U.S. 722, 729 (1991). However, "[i]n those cases in which it does not fairly appear that the state court rested its decision primarily on federal grounds," a federal court must discern whether the state court relied on independent and adequate state law grounds for its decision. *Coleman*, 501 U.S. at 737; *see also Harris v. Reed*, 489 U.S. 255, 263 (1989). Indeed, "if the decision of the last state court to which the petitioner presented his federal claims fairly appeared to rest primarily on resolution of those claims, or to be interwoven with those claims, and did not clearly and expressly rely on an independent and adequate state law ground, a federal court may address the petition." *Id.* at 735. In sum, federal habeas review is precluded "only if the state court 'clearly and expressly' stated that the state procedural ground was a basis for its decision independent of the federal-law ground." *Foster v. Johnson*, 293 F.3d 766, 786 (5th Cir. 2002)

9

(quoting *Coleman*, 501 U.S. at 735), *cert. denied sub nom.*, *Foster v. Epps*, __ U.S.__, 123 S. Ct. 625 (2002); *see also Bledsue v. Johnson*, 188 F.3d 250, 257 (5th Cir. 1999) ("[T]he mere existence of a procedural default does not deprive federal courts of jurisdiction.  Quite to the contrary, to prohibit our collateral review the state court must have *expressly* relied on the procedural bar as the basis for disposing of the case.").

Petitioner raised his first seven claims in his second state habeas application.  Respondent argues that the state courts rejected those claims on procedural grounds.  Respondent relies on the lower state habeas court's opinion which stated as follows:

> The Court notes that Applicant did not show why all his Claims for Relief, and their sub-issues, are not procedurally-barred through his failure to preserved [*sic*] them for appellate review with a sufficient objection, Tex. R. App. Proc. 33.1(a)(2001); his failure to have raised them on direct appeal or in his first Application; or through their unfavorable disposition on direct appeal.

> This Court also notes that Applicant did not show why all his Claims for Relief, and their sub-issues, are not subject to harmless-error analyses and, therefore, proper habeas subjects given the state of his trial and post-conviction record.

Second State Habeas Record at 326, ¶ 5.  The lower court's order subsequently refers back to this general paragraph several times, without specifying which particular procedural rule would bar consideration of each habeas claim.  The majority of the state court's disposition, nonetheless, appears to have focused on the merits of Petitioner's state habeas claims.

Respondent contends that the lower state court's recommendation should bar federal review of Petitioner's claims.  This Court would note, however, that the Court of Criminal Appeals reviewed the lower court's findings and conclusions and then "denied" relief.  *Ex parte Colella*, No.

37,418-02 (Tex. Crim. App. Sept. 19, 2001).[2] The Court of Criminal Appeals has specified that in its "writ jurisprudence, a 'denial' signifies that [it] addressed and rejected the merits of a claim . . . ." *Ex parte Torres*, 943 S.W.2d 469, 472 (Tex. Crim. App. 1997); *see also Singleton v. Johnson*, 178 F.3d 381, 384 (5th Cir. 1999) ("In Texas writ jurisprudence, usually a denial of relief rather than a 'dismissal' of the claim by the Court of Criminal Appeals disposes of the merits of a claim.'"). "On the other hand, the word "'dismissal' means that [the Court of Criminal Appeals] declined to consider the claim for reasons unrelated to the claim's merits." *Torres*, 343 S.W.2d at 472.

"Here, [the Court of Criminal Appeals] 'denied' the habeas application, thereby signifying its rejection of the merits--albeit for no additional reasons, but certainly not expressly on the basis of an independent and adequate state procedural ground." *Bledsue*, 188 F.3d at 257. The Court of Criminal Appeals' determination does not suggest reliance on a state procedural rule in rejecting Petitioner's claims. This is not a case where "the last state court rendering a judgment in the case clearly and expressly state[d] that its judgment rests on a state procedural bar." *Boyd v. Scott*, 45 F.3d 876, 880 (5th Cir. 1994), *cert. denied*, 514 U.S. 1111 (1995).

Even the lower court's reliance on the procedural bar does not indicate sufficient independence from its review of the merits to bar federal consideration. The lower court's order did mention the procedural bar, but never specified under which potential procedural rule it dismissed each claim. In fact, the lower court's across-the-board application of several procedural doctrines suggests that the true focus of its denial was not Texas' procedure, but a rejection of the merits. As

---

[2]     In the relevant portion of the Court of Criminal Appeals's opinion in Petitioner's second state habeas proceedings, that court stated: "This Court has reviewed the record with respect to the allegations made by Applicant. Based on our review of Applicant's claims and the record, the relief sought is denied." *Ex parte Colella*, No. 37,418-02 (Tex. Crim. App. Sept. 19, 2001).

the state courts did not expressly rely on independent state procedural law in rejecting the merits of

Petitioner's claims, this Court may consider their merits on federal review.

### ANALYSIS

Of the eight claims presented in the instant petition, four claims rest on a legal or factual

basis for which summary judgment would be proper at this stage of the proceedings. This Court will

consider Respondent's summary judgment motion insofar as it challenges Petitioner's fourth, fifth,

seventh, and eighth grounds for relief.

**A.    Motion to Change Venue (ground four)**

Petitioner argues that the trial court violated his constitutional rights by not transferring his

trial to a county that had not been infected by pre-trial publicity. According to Petitioner's argument,

the media extensively reported on the facts of this case, specifically focusing on testimony from his

co-defendant wife's trial. Petitioner contends that the far-reaching publicity in this case prevented

an unacceptable risk that potential jurors were biased in their consideration of his case. Petitioner

supports this argument by referring to media reports and by pointing out jurors who expressed

familiarity with his case during voir dire.

The right to a jury trial "guarantees to the criminally accused a fair trial by a panel of

impartial, 'indifferent' jurors." *Irwin v. Dowd*, 366 U.S. 717, 722 (1961); *see also Murphy v.*

*Florida*, 421 U.S. 794, 799-800 (1975). "When prejudicial pretrial publicity or an inflamed

community atmosphere preclude seating an impartial jury, due process requires the trial court to

grant a defendant's motion for a change of venue or a continuance." *Coleman v. Zant*, 708 F.2d 541,

544 (5th Cir. 1983) (citations omitted). The Supreme Court has long held that to have an impartial

jury, "[i]t is not required . . . that the jurors be totally ignorant of the facts and issues involved" in

12

a case. *Irvin*, 8366 U.S. at 722; *Murphy*, 421 U.S. at 800. The Supreme Court has explained the

constitutional standard for reviewing the partiality of jurors exposed to pre-trial publicity as follows:

> In these days of swift, widespread and diverse methods of communication, an
> important case can be expected to arouse the interest of the public in the vicinity, and
> scarcely any of those best qualified to serve as jurors will not have formed some
> impression or opinion as to the merits of the case. This is particularly true in
> criminal cases. To hold that the mere existence of any preconceived notion as to the
> guilt or innocence of an accused, without more, is sufficient to rebut the presumption
> of a prospective juror's impartiality would be to establish an impossible standard.
> It is sufficient if the juror can lay aside his impression or opinion and render a verdict
> based on the evidence presented in court.

*Irwin*, 366 U.S. at 722-23. Therefore, a defendant's constitutional rights are violated if he shows that

"the trial atmosphere was 'utterly corrupted by press coverage.'" *Black v. Collins*, 962 F.2d 394, 409

(5th Cir. 1992) (quoting *Dobbert v. Florida*, 432 U.S. 282, 303 (1977)), *cert. denied*, 504 U.S. 992

(1992).

To succeed on a claim that a denial of a motion to change venue violated the Constitution,

a petitioner has the burden of showing either actual prejudice or that the circumstances support a

presumption of prejudice. *See Coleman*, 708 F.2d at 545. "As a general rule, a state defendant who

seeks habeas relief as a result of pretrial publicity must demonstrate an actual, identifiable prejudice

on the part of members of the jury that is attributable to that publicity." *Willie v. Maggio*, 737 F.2d

1372, 1386 (5th Cir.), *cert. denied*, 469 U.S. 1002 (1984). A federal petitioner must make two

showings to establish actual prejudice. First, a petitioner must show that one or more jurors held an

opinion, before hearing the trial evidence, that the defendant was guilty. *See Irvin*, 366 U.S. at 723.

Second, a petitioner must show that these jurors could not have laid aside their opinions and

"render[ed] a verdict based on the evidence presented in court." *See id.* at 723. A petitioner makes

this showing through the transcript of voir dire examination. *See Murphy*, 421 U.S. at 800.

13

The Supreme Court has recognized a narrow exception to the rule that a petitioner must show prejudice due to pretrial publicity. In *Rideau v. Louisiana*, 373 U.S. 723 (1963),[3] the Supreme Court held that "where a petitioner adduces evidence of inflammatory, prejudicial pretrial publicity that so pervades or saturates the community as to render virtually impossible a fair trial by an impartial jury drawn from that community,' jury prejudice is presumed and there is no further duty to establish bias." *Mayola*, 623 F.2d 992, 997 (5th Cir. 1980) (explaining *Rideau*), *cert. denied*, 451 U.S. 913 (1981); *see also United States v. Lipscomb*, 299 F.3d 303, 344 (5th Cir. 2002). "Given that virtually every case of any consequence will be the subject of some press attention, however, the *Rideau* principle of presumptive prejudice is only rarely applicable, and is confined to those instances where the petitioner can demonstrate an extreme situation of inflammatory pretrial publicity that literally saturated the community in which his trial was held." *Mayola*, 623 F.2d at 997 (quotation and citations omitted); *see also Rideau*, 373 U.S. at 726 (presuming prejudice when "[a]ny subsequent court proceedings in a community so pervasively exposed to such a spectacle could be but a hollow formality"). A petitioner must show that "the community has become *per se* incapable of yielding an unbiased jury" because of inflammatory and excessive publicity. *Moore v. Johnson*, 225 F.3d 495, 505 (5th Cir. 2000), *cert. denied*, 532 U.S. 949 (2001). A petitioner must make two showings before a reviewing court will presume prejudice: (1) the pretrial publicity was extremely prejudicial and inflammatory, and (2) the prejudicial pretrial publicity saturated the community where the trial was held. *See Rideau*, 373 U.S. at 726-27; *Murphy*, 421 U.S. at 798-99.

---

[3]     In *Rideau*, the Supreme Court presumed jury prejudice based on a showing that a twenty-minute film of the defendant's confession had been broadcast three times on a television station in the community where the crime and the trial took place.

### 1.    Presumed Prejudice

Petitioner argues that this Court should presume prejudice due to the media coverage of his case. It is undisputed that media coverage was extensive. A comparison of the quality and quantity of that coverage to media coverage in the cases in which the Supreme Court has presumed prejudice illustrates that this case does not fall into *Rideau*'s narrow exception to the requirement that a petitioner show actual prejudice.

The Supreme Court has presumed prejudice in three cases: *Rideau v. Louisiana*, 373 U.S. 723 (1963), *Estes v. Texas*, 381 U.S. 532 (1965), and *Sheppard v. Maxwell*, 384 U.S. 333 (1966). In each of those cases, the Supreme Court concluded that the inflammatory nature and amount of publicity before trial required a presumption of prejudice to the venire. In *Rideau*, the media repeatedly televised a twenty-minute in-jail police interrogation of the defendant's confession to the murder for which he was subsequently convicted. "The trial in *Estes* had been conducted in a circus atmosphere, due in large part to the intrusions of the press, which was allowed to sit within the bar of the court and to overrun it with television equipment." *Murphy*, 421 U.S. at 799. The trial in *Sheppard* created "not only a background of extremely inflammatory publicity but also a courthouse given over to accommodate the public appetite for carnival." *Id.* The Supreme Court characterized the circumstances that led to the presumption of prejudice:

> The proceedings in these cases were entirely lacking in the solemnity and sobriety to which a defendant is entitled in a system that subscribes to any notion of fairness and rejects the verdict of a mob. They cannot be made to stand for the proposition that juror exposure to information about a state defendant's prior convictions or to news accounts of the crime with which he is charged alone presumptively deprives the defendant of due process.

*Id.*

15

In this case, unlike *Rideau*, *Estes*, and *Sheppard*, the extensive publicity did not result in a circus-like atmosphere. Some potential jurors apparently reported some familiarity with the case before trial. Petitioner, however, presents no evidence that supports an inference that the media coverage would prevent jurors from setting aside their preconceptions and deciding the case based on the facts adduced at trial. The nature of the pretrial publicity is similarly not as inflammatory or graphic compared to those Supreme Court cases presuming prejudice. While acknowledging the brutal nature of the murders, the news media did not do so in the same inflammatory manner as in the cases in which the Supreme Court presumed prejudice. The bulk of the media attention in this case seemed to focus on a description of the facts of the crime rather than a confession by the defendant as in *Rideau*, did not create a circus atmosphere as in *Estes*, and was not sensationalistic and lurid as in the *Sheppard* case. The comparison between the pretrial publicity in this case with those cases in which the Supreme Court presumed prejudice leads to the conclusion that Petitioner must show actual prejudice to prevail on his habeas claim.

### 2.    **Actual Prejudice**

The record shows that the trial court's decision not to change the trial's venue did not actually prejudice the defense. This is not to suggest an ignorance of the facts of the case on the part of the prospective jurors. Yet the record does not support Petitioner's argument that he suffered actual or presumed prejudice from the media coverage in this case. Petitioner points to four members of the jury who served at his trial who expressed some familiarity with the facts of his case.[4] The Supreme

---

[4]    Petitioner also points to four prospective jurors removed from the jury panel, either by a challenge for cause or by a peremptory challenge, who indicated some familiarity with the case and expressed a predisposition to find him guilty. These jurors did not serve on his jury and their influence did not taint Petitioner's trial with unfairness. These individual jurors do not represent a pattern of partiality that would have prevented the seating of an impartial jury.

Court does not hold that a juror must be "totally ignorant of the facts and issues involved," but that he or she be able to "lay aside his impression or opinion and render a verdict based on the evidence presented in court." *Irvin*, 366 U.S. at 723.  While the prospective jurors in this case knew some facts about the crime, each juror now challenged by Petitioner expressed an ability to consider the evidence at trial impartially.  Tr. Vol. VI at 198, 289-91; Vol. IX at 892-93, 1006.  Petitioner fails to point to any juror whose voir dire examination responses expressed or indicated a bias that would have prejudiced the outcome in this case.

The lower state habeas court concluded that Petitioner failed to show that pretrial publicity prejudiced his trial and the Court of Criminal Appeals rejected this claim.  Second State Habeas Record at 338-340.  The state court's rejection of this claim was reasonable and not contrary to federal law.  *See* 28 U.S.C. § 2254(d)(1).  Federal habeas relief is unavailable on this claim.

**B.    Insufficiency of the evidence under state law (ground five)**

Petitioner fifth claim is that the evidence supporting his conviction was factually insufficient under *Clewis v. State*, 922 S.W.2d 126, 129 (Tex. Crim. App. 1996).  In *Clewis*, the Court of Criminal Appeals held that Texas state appellate courts had the authority to consider factual questions in criminal cases.  *See id.* at 128-29.  Based on Texas constitutional law, the *Clewis* court found that Texas appellate courts have a broad right to view evidence independent from the "in the light most favorable to the prosecution" standard from *Jackson v. Virginia*, 443 U.S. 307 (1979), employed to determine the *legal* sufficiency of the evidence under federal law.  *See id.* at 129. Instead, the Court of Criminal Appeals allowed Texas appellate courts to engage in a *factual* sufficiency review, setting aside the verdict "if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust." *Clewis*, 922 S.W.2d at 129 (quoting *Stone v. State*, 823

17

S.W.2d 375, 381 (Tex. App. --Austin 1992, pet. ref'd, untimely filed)). Petitioner argues that factual questions in his case indicate that the jury's reliance on internally inconsistent trial testimony provided an insufficient basis to find him guilty of capital murder.

Petitioner's argument, however, fails to account for the fact that "[t]he *Clewis* standard is rooted in the Texas constitution." *Woods v. Cockrell*, 307 F.3d 353, 358 (5th Cir. 2002). A corresponding right to a factual sufficiency review does not exist under the United States Constitution. The Supreme Court has never held that a reviewing court must re-weigh the factual sufficiency of the evidence supporting a conviction. Based on fundamental principles of comity and federalism, the Fifth Circuit and this Court "cannot impose a Texas constitutional standard for the factual review of the elements of a crime on the state's courts of appeals when reviewing" capital convictions. *Id.* Federal habeas relief is unavailable because this claim is not based on federal law.

**C.    Right to Meaningful Appellate Review (ground seven)**

Petitioner argues that the Court of Criminal Appeals violated his constitutional right to meaningful appellate review by refusing to reconsider the jury's answer to the mitigation special issue. The Fifth Circuit has repeatedly addressed, and rejected, Petitioner's claim that the Constitution requires the Court of Criminal Appeals to reconsider a jury's response to mitigating evidence. *See Woods*, 307 F.3d at 359-60; *Beazley v. Johnson*, 242 F.3d 248, 261 (5th Cir.), *cert. denied*, 534 U.S. 945 (2001); *Moore*, 225 F.3d at 505-07; *Hughes v. Johnson*, 191 F.3d 607, 621-23 (5th Cir. 1999), *cert. denied*, 528 U.S. 1145 (2000). Petitioner does not attempt to distinguish the Fifth Circuit precedent that governs this claim.

With respect to the future dangerousness special issue, the Court of Criminal Appeals evaluates the sufficiency of the objective evidence that contributes to a death sentence. *See Beazley*,

242 F.3d at 261; *McFarland v. State*, 928 S.W.2d 482, 498 (Tex. Crim. App. 1996), *cert. denied*, 519 U.S. 1119 (1997). Specifically, the Court of Criminal Appeals considers both the evidence supporting the determination of guilt and the jury's answer to the "future dangerousness" special issue. Under Texas's current capital sentencing scheme, the jury considers mitigating evidence in the punishment phase through a separate statutory special issue.[5] After finding a defendant to be death-eligible at the guilt/innocence phase, and having found that the defendant would pose a future danger to society, the jury must answer:

> Whether, taking into consideration all of the evidence, including the circumstances of the offense, the defendant's character and background, and the personal moral culpability of the defendant, there is a sufficient mitigating circumstance or circumstances to warrant that a sentence of life imprisonment rather than a death sentence be imposed.

---

[5] While mitigating evidence is now expressly considered under a separate special issue, prior to 1991 the Texas sentencing scheme did not ask the jury to specifically evaluate mitigating evidence. Instead, a jury considered mitigating factors under the "future dangerousness" and "deliberateness" special issues. Until *Penry I*, the Supreme Court held that the Texas sentencing statute complied with constitutional requirements. *See Franklin v. Lynaugh*, 487 U.S. 164, 182 (1988); *Jurek v. Texas*, 428 U.S. 262, 273 (1976). The Supreme Court held that the "Texas special issues adequately 'allow[ed] the jury to consider the mitigating aspects of the crime and the unique characteristics of the perpetrator, and therefore sufficiently provid[ed] for jury discretion." *Franklin*, 487 U.S. at 182 (quoting *Lowenfield v. Phelps*, 484 U.S. 231, 245 (1988)). In *Penry I*, however, the Supreme Court held that some mitigating evidence, specifically Penry's severe childhood abuse and mental retardation, could not be fully and adequately considered under the two Texas special issues. The Fifth Circuit still wrestles with the Supreme Court's actions in *Penry I* and *II*. *See Robertson v. Cockrell*, 300 F.3d 881 (5th Cir. 2002) (granting *en banc* review of a *Penry* claim). In any event, neither *Penry* case purported to overrule *Jurek*. Also, Texas's statutory revisions in the wake of *Penry I* left untouched the "future dangerousness" special issue. Therefore, a jury may consider mitigating evidence in determining future dangerousness, as well as in connection with the special issue on mitigation, quoted above in the text. Presumably, the traditional appellate review of the future dangerousness special issue also encompasses any mitigating evidence considered in that question and not excluded as in *Penry I*. Contrary to Petitioner's complaint, therefore, Texas provides at least some appellate means of evaluating mitigating evidence. *See Moore*, 225 F.3d at 506.

TEX. CODE CRIM. PRO. art. 37.071, § 2(e).[6] Texas law defines mitigating evidence as "evidence that a juror might regard as reducing the defendant's moral blameworthiness." TEX. CODE CRIM. PRO. art. 37.071 § 2(f)(4). In this case, the jury answered in the negative a special issue substantially similar to that found in TEX. CODE. CRIM. PRO. art. 37.071, § 2(e).

The Supreme Court has repeatedly emphasized that a state must provide meaningful appellate review of death sentences. *See, e.g., Parker v. Dugger*, 498 U.S. 308, 321 (1991); *Clemons v. Mississippi*, 494 U.S. 738, 749 (1990). The Supreme Court, however, has never held that the Constitution requires an appellate court to reevaluate the mitigating evidence presented to the jury. Indeed, "no Supreme Court or Fifth Circuit authority expressly requires the 'independent' review" of mitigating evidence by a state court. *Hughes*, 191 F.3d at 622.

A death sentence requires "an *individualized* determination on the basis of the character of the individual and the circumstances of the crime." *Zant v. Stephens*, 462 U.S. 862, 879 (1983). This determination, however, must defer to the jury's "narrowly cabined but unbridled discretion to consider any mitigating factors submitted by the defendants and weighed as the jury sees fit . . . ." *Moore*, 225 F.3d at 506-07. As a result of a jury's unbridled discretion, the Court of Criminal Appeals refuses to analyze whether sufficient evidence supported this determination. *See, e.g., McFarland*, 928 S.W.2d at 498 ("Because the weighing of 'mitigating evidence' is a subjective

---

[6]    "Given the awesome power that a sentencing jury must exercise in a capital case, it may be advisable for a State to provide the jury with some framework for discharging these responsibilities." *Franklin*, 487 U.S. at 179. However, the Supreme Court has "never held that a specific method for balancing mitigating and aggravating factors in a capital sentencing proceeding is constitutionally required." *Id.* While the Supreme Court has grappled in the past with the consideration of mitigating evidence by Texas capital juries in *Penry I* and *Penry II*, the current manner of Texas juries give effect to mitigating evidence is presumably constitutional. *See Penry v. Johnson*, 532 U.S. 782, 803 (2001) ("*Penry II*").

determination undertaken by each individual juror, we decline to review that evidence for 'sufficiency.'"). "It is just this narrowly cabined but unbridled discretion to consider any mitigating factors submitted by the defendants and weighed as the jury sees fit that Texas has bestowed on the jury. In doing so, Texas followed Supreme Court instructions to the letter." *Moore*, 225 F.3d at 506. Nothing in Supreme Court precedent requires an appellate court to reevaluate a jury's individualized consideration of mitigating evidence.

With respect to this issue, the Fifth Circuit has stated that "[n]o court could find that Texas had acted contrary to federal law as explained by the Supreme Court, and no benefit will arise from further consideration of the obvious." *Id.* at 507; *see also Woods*, 307 F.3d at 360. Contrary to Petitioner's argument, there is no right to an independent review of the mitigating factors on direct or collateral review. *See Hughes*, 191 F.3d at 623; *see also Beazley*, 242 F.3d at 260.[7] Petitioner's claim relating to the Court of Criminal Appeals' evaluation of mitigating evidence is without merit.

**D.    Voir dire of William Bristol (ground eight)**

Petitioner contends that the trial court improperly dismissed potential juror William Bristol for cause. Apparently, in his juror questionnaire Mr. Bristol indicated that he had hesitations about imposing a death sentence. Tr. Vol. VI at 90-91. During the State's questioning of Mr. Bristol, he indicated that he would have reservations about assessing the death penalty. Tr. Vol. VI at 91. Also, when asked if he could impose a death sentence he stated "I wouldn't be–give it, kill another human being." Tr. Vol. VI at 92. He again affirmed that personal reasons would influence his consideration of a death sentence. Tr. Vol. VI at 92.

---

[7]    In addition, this Court to rule otherwise would require the creation of a new rule in violation of the non-retroactivity principle of *Teague*. *See Woods*, 307 F.3d at 360; *Beazley*, 242 F.3d at 263.

During his defense examination trial counsel elicited from Mr. Bristol the fact that he would be able to answer the special issues as required by the jury's oath. Tr. Vol. VI at 101-02. After the defense examination, the State challenged Mr. Bristol for cause for his inability to impose a death sentence. Tr. Vol. VI at 102-03. Trial counsel argued that his examination of Mr. Bristol rehabilitated him with respect to his ability to consider a death sentence. Tr. Vol. VI at 103. The trial court granted the challenge for cause, stating: "I have, in not just one question, based on the totality of the examination by both parties, I find that juror–this juror is not acceptable. Therefore, I hereby grant the challenge for cause." Tr. Vol. VI at 104. The trial court then excused Mr. Bristol. Tr. Vol. VI at 105.

On direct appeal, Petitioner challenged the trial court's denial of his challenge for cause. The Court of Criminal Appeals noted that Mr. Bristol "emphasized his disagreement with the death penalty." *Colella*, 915 S.W.2d at 842. The Court of Criminal Appeals concluded as follows:

> Although during his voir dire as a whole Bristol seemed to state that he could follow the statutory scheme, his answers were nevertheless sufficient to support a rational conclusion by the trial judge that he would automatically find mitigating circumstances to justify avoiding assessment of a death sentence, regardless of the evidence adduced at trial. Therefore, the trial court did not abuse its discretion in granting the State's challenge for cause.

*Colella*, 915 S.W.2d at 842 (citation omitted). This Court will review that determination under the AEDPA.

Exclusion of prospective jurors "hesitant in their ability to sentence a defendant to death" without any limitation violates the Fourth and Fourteenth amendments. *Morgan v. Illinois*, 504 U.S. 719, 732 (1992); *see also Adams v. Texas*, 448 U.S. 38, 45 (1980); *Witherspoon v. Illinois*, 391 U.S. 510, 521-22 (1968). The State must demonstrate through questioning that the potential juror it seeks

22

to exclude lacks impartiality, and the judge must then determine whether the state's challenge is proper. *See Wainwright v. Witt*, 469 U.S. 412, 423 (1985). Thus, the key issue is "whether the juror's views would 'prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath.'" *Id.* at 424 (quoting *Adams*, 448 U.S. at 45).

The exclusion of potential jurors is a question of fact. *See McCoy v. Lynaugh*, 874 F.2d 954, 960 (5th Cir. 1989); *Patton v. Yount*, 467 U.S. 1025, 1036 (1984). The factual determinations of the Court of Criminal Appeals are presumed to be correct, and the petitioner has the burden of rebutting these determinations by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1). This Court can grant federal habeas relief only if the state court decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2); *see also Fuller v. Johnson*, 114 F.3d 491, 500-01 (5th Cir.) (holding that a trial court's finding of juror bias is entitled to a presumption of correctness), *cert. denied*, 522 U.S. 963 (1997); *Granviel v. Lynaugh*, 881 F.2d 185, 187 (5th Cir. 1989) (stating that "[b]ecause of the difficulty of divining a prospective juror's state of mind, particularly on a cold record, we pay deference to the trial court's factual determination"), *cert. denied*, 495 U.S. 963 (1990).

Based on the record, Respondent contends that the trial court properly excluded Mr. Bristol from the jury, arguing that the trial court observed Mr. Bristol's demeanor and could reasonably believe that he would not be impartial in deciding the special issues. Moreover, Respondent contends that Petitioner has not shown by "clear and convincing evidence" that the state court's finding was incorrect. In essence, Respondent assets that Mr. Bristol exemplifies the juror described in *Wainwright v. Witt*:

What common sense should have realized experience has proved: many veniremen simply cannot be asked enough questions to reach the point where their bias has been made "unmistakably clear"; these veniremen may not know how they will react when faced with imposing the death sentence, or may be unable to articulate, or may wish to hide their true feelings. Despite this lack of clarity in the printed record, however, there will be situations where the trial judge is left with the definite impression that a prospective juror would be unable to faithfully and impartially apply the law.

469 U.S. 412 at 424-25 (footnote omitted).

After reviewing the record, this Court is in agreement with Respondent that the state court's finding with regard to this claim was reasonable in light of Mr. Bristol's responses. *See* 28 U.S.C. § 2254(d)(2). Because the trial court clearly could have been "left with the definite impression that [Mr. Bristol] would be unable to faithfully and impartially apply the law," *Witt*, 469 U.S. at 426, the trial court had a reasonable basis for granting the State's challenge for cause. Although some vacillation is reflected in his answers, Mr. Bristol's voir dire ultimately left the trial court with the impression that he would not be an impartial juror. In short, Petitioner has failed to demonstrate that the state court disposition "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." *See* 28 U.S.C. § 2254(d)(2). Thus, federal habeas relief is unavailable on Petitioner's eighth ground.

## F.    Claim for Which Summary Judgment is not Appropriate at this Time

Petitioner raises four other claims that will be impacted by the evidentiary hearing scheduled in this case: (1) his claim of prosecutorial misconduct; (2) his claim that the State of Texas deprived him of adequate defensive resources; (3) his claim that trial counsel provided ineffective assistance in the pre-trial, guilt/innocence, punishment, and appellate stages of his proceedings; and (4) his claim of cumulative error. The factual basis for each of these claims remains at least partially undeveloped and serious questions of material fact remain unresolved. As such, summary judgment

24

on these claims is inappropriate at this time. The Court recommends the denial of Respondent's summary judgment motion without prejudice with respect to the first, second, third, and sixth claims presented in the instant petition.

## RECOMMENDATION

For the foregoing reasons, this Court finds that no genuine issues of material fact remain unresolved with respect to four of Petitioner's claims and that Respondent is entitled to partial summary judgment. However, genuine issues of material fact persist concerning Petitioner's first, second, third, and sixth grounds for relief. This Court recommends that Respondent's Motion for Summary Judgment (Docket Entry No. 11) be **GRANTED IN PART** and **DENIED WITHOUT PREJUDICE IN PART**.

## NOTICE TO PARTIES

A party's failure to file written objections to the proposed findings, conclusion, and recommendation in a magistrate judge's report and recommendation within ten (10) days after being served with a copy shall bar that party, except upon the grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusion accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *See Douglass v. United States Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996).

DONE at Brownsville, Texas this 19th day of February, 2003.

John Wm. Black
United States Magistrate Judge

25

# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# BROWNSVILLE DIVISION

| | | |
|---|---|---|
| **PAUL RICHARD COLELLA,** | § | |
| **Petitioner,** | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO. B-01-166** |
| | § | |
| **JANIE COCKRELL,** | § | |
| **DIRECTOR, TEXAS DEPARTMENT** | § | |
| **OF CRIMINAL JUSTICE,** | § | |
| **INSTITUTIONAL DIVISION,** | § | |
| **Respondent.** | § | |

## ORDER ADOPTING
## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

The Court has reviewed the Magistrate Judge's Report and Recommendation of February 19, 2003, regarding Respondent's Motion for Summary Judgment (Docket Entry No. 11). After having conducted a *de novo* review of the entire file, the Court is of the opinion that said Report and Recommendation should be adopted.

It is, therefore, **ORDERED** that the Report and Recommendation is hereby **ADOPTED**, and Respondent's Motion for Summary Judgment is **GRANTED IN PART** and **DENIED IN PART**.

DONE at Brownsville, Texas, on this ____ day of _____, 2003.

_____
Filemon B. Vela
United States District Judge